IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HORNICEK, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION NO. |
| vs. | 2:10-cv-03631-LP |
| CARDWORKS SERVICING, LLC | CLASS ACTION |
| Defendant. | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND STAY FURTHER PROCEEDINGS
INCLUDING DISCOVERY**

Defendant, CARDWORKS SERVICING, LLC, ("Defendant" or "Cardworks"), respectfully submits this brief in support of its Motion to Compel Arbitration and Stay Further Proceedings Including Discovery.

**I.    FACTS**

On or about December 24, 2004, Plaintiff obtained a credit card account from Merrick Bank (the "credit card account"). Plaintiff received both a credit card account bearing an account number ending with 7453 and a copy of the agreement which governed the terms and conditions of the credit card account (the "credit card agreement"). Merrick Bank updated the terms and conditions of the credit card agreement in March of 2007 and mailed a copy of the modification to Plaintiff from its New York office to Plaintiff in Pennsylvania. Plaintiff continued to use the credit card for purchases and/or cash advances subsequent to the modification. Plaintiff made payments to Merrick Bank by sending them to its New York office. Merrick Bank sent monthly bills to Plaintiff in Pennsylvania.

1

Plaintiff defaulted on the credit card account.  Merrick Bank assigned the credit card account to Cardworks Servicing, LLC ("Cardworks") to collect the unpaid debt.  Cardworks sent written correspondence to Plaintiff on December 17, 2008, March 29, 2009, and February 16, 2010, asking Plaintiff to pay the debt.  Plaintiff filed the instant action against Cardworks alleging that Cardworks' correspondence dated February 16, 2010 violated federal and state law.  Plaintiff's Complaint purports to be a class action on behalf of himself and all others similarly situated.

Plaintiff's credit card agreement includes an arbitration agreement.  The arbitration agreement allows the consumer to reject the arbitration agreement but only if he sends written notification to Merrick Bank within 60 days after the date the credit card account was opened.  Plaintiff did not exercise this right to reject arbitration.

The arbitration agreement includes any dispute the consumer may have against Merrick Bank's assignees.  The agreement specifically states "The claims covered by this agreement to arbitrate include, without limitation:…Any disputes arising from the collection of amounts you owe in connection with your Account."  The arbitration agreement continues: "BY ACCEPTING THIS ARBITRATION AGREEMENT, YOU AGREE TO WAIVE THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION…RELATED TO THIS AGREEMENT OR YOUR ACCOUNT."

Cardworks elects arbitration pursuant to the credit card agreement.  According to the terms of same, "any demand for arbitration that is made after a lawsuit or other legal proceeding has begun must be made within 90 days following the service of the complaint." Cardworks was served with Plaintiff's Complaint on August 6, 2010.  On September 9, 2010, demand was made upon Plaintiff, through his counsel of record, to arbitrate his claims.  At all times relevant to this

action, Merrick Bank's principal place of business is located in Utah and conducted business with Plaintiff who was located in Pennsylvania.

**II.     ARGUMENT**

    1. <u>**The Federal Arbitration Act Applies**</u>

The Federal Arbitration Act (the "FAA" or the "Act") provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." <u>9 U.S.C. § 2</u>.  The Act defines "commerce" as "commerce among the several States." <u>9 U.S.C. § 1</u>.  "[T]he word 'involving' . . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, <u>in fact</u>, to have involved interstate commerce." <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 276-277 (1995) (emphasis in original).

    The Eleventh Circuit has stated "credit cards generally are issued to applicants by out-of-state financial institutions, and credit-card account numbers travel across state lines, both electronically and by mail." <u>United States v. Klopf</u>, 423 F.3d 1228, 1241 (11th Cir. Fla. 2005). Merrick Bank is a financial institution, and under <u>Klopf,</u> the interstate commerce element of the FAA is satisfied.  Additionally, Merrick Bank's principal place of business is located in the State of Utah. Plaintiff is a resident of the State of Pennsylvania and Merrick conducted business with Plaintiff while Plaintiff was located in Pennsylvania.  Accordingly, Plaintiff's credit card agreement, which includes the agreement to arbitrate, is made pursuant to a transaction involving interstate commerce within the meaning of the FAA, and the FAA applies to this action.

### 2. **Federal Law Strongly Favors Enforcement of Arbitration Agreements**

The FAA specifically provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3. If a party refuses to participate in arbitration, the Act requires the Court to order the parties "to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4

The Supreme Court has reaffirmed that federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements. Randolph v. Green Tree Financial Corp., 539 U.S. 79, 121 S. Ct. 513 (2000); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S. Ct. 1920 (1995). Congress specifically enacted the FAA to "revers[e] centuries of judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987) (citations omitted).

The Supreme Court has stressed that arbitration is also favored in consumer disputes:

> We agree that Congress, when enacting this law [*i.e.* the FAA], had the needs of consumers, as well as others, in mind . . .[T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business alike, corporate interests [and] individuals. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.

Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. at 280 (citations omitted, brackets in original).

Arbitration agreements remain favored and enforceable even in the face of an alleged disparity in the parties' bargaining power. Randolph, 121 S. Ct. at 522-23 (enforcing arbitration clause in dispute between consumer and lender); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32-33 (1991) (enforcing arbitration clause in dispute between employer and employee); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir.) (enforcing arbitration clause in dispute between consumer and computer manufacturer), cert. denied, 522 U.S. 808 (1997); Harris v. Green Tree Financial Corp., 183 F.3d 173 (3d Cir. 1999) (enforcing arbitration clause in dispute between consumer and lender). This Court should enforce the terms of the arbitration agreement contained in the Plaintiff's credit card agreement and compel this action to arbitration.

**3. The Plaintiff's Claims Fall Squarely Within The Broad Scope Of The Arbitration Agreement.**

A request to arbitrate a particular grievance should not be denied unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Technologies, Inc. v. Communication Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (citation and internal quotation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25. Accord B.G. Balmer & Co. v. United States Fid. & Guar. Co., 1998 U.S. Dist. LEXIS 17175, 14-15 (E.D. Pa. Oct. 30, 1998). As this Court explained: "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations . . . the parties' intentions control, but those intentions are generously construed as to issues of

arbitrability." Klauder & Nunno Enterprises, Inc. v. Choudhury, 1987 U.S. Dist. LEXIS 8699 (E.D. Pa. Sept. 24, 1987).

In determining whether a particular claim falls within the scope of the arbitration agreement, the Court's focus is on the factual underpinnings of the claim rather than the legal theories alleged in the complaint. Gregory, 83 F.3d at 384; Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). As the Seventh Circuit explained: "The touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause." Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 643 (7th Cir. 1993) (citation omitted). Additionally, the Court may not reach the merits of an arbitrable claim. Kelly v. Merrill Lynch, Pierce, Fenner & Smith, 985 F.2d 1067, 1069 (11th Cir. 1993), cert. denied, 510 U.S. 1011 (1994).

A true and correct copy of the arbitration agreement is attached to the Declaration of Cami Mitchell Watson as Exhibit "B." This agreement is the most current version of Plaintiff's credit card agreement. The arbitration agreement states that the parties agree that they will arbitrate any claims they might have against the other or third parties. The arbitration agreement includes any dispute the consumer may have against Merrick Bank's assignees. The arbitration agreement specifically covers claims arising out of the collection of Plaintiff's account, stating: "The claims covered by this agreement to arbitrate include, without limitation:…Any disputes arising from the collection of amounts you owe in connection with your Account." This unambiguously includes claims arising out of collection activity on the account.

The arbitration agreement specifically eliminates Plaintiff's right to bring class claims, stating: "BY ACCEPTING THIS ARBITRATION AGREEMENT, YOU AGREE TO WAIVE

THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION…RELATED TO THIS AGREEMENT OR YOUR ACCOUNT."

Plaintiff's claims fall inside the broad scope of the arbitration agreement. The factual underpinning of Plaintiff's claim relates to the efforts of Cardworks to service and collect the account on behalf of Merrick Bank. Merrick Bank assigned the credit card account to Cardworks for collection and the arbitration agreement specifically covers disputes with Merrick Bank's assignees. Further, the arbitration agreement expressly applies to "any disputes arising from the collection of amounts you owe in connection with your Account." Plaintiff's claims are covered by arbitration.

4. **It Does Not Matter That Cardworks Is Not An Original Party To The Loan Agreement**

It is of no consequence, that Cardworks is not an original party of the loan agreement with Plaintiff. A nonparty to an arbitration agreement may nonetheless benefit from and enforce an arbitration agreement if the language of the agreement is broad enough to encompass claims involving the nonparty. See Phila Flyers v. Trustmark Ins. Co., 2004 U.S. Dist. LEXIS 12772 (E.D. Pa. July 6, 2004); E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3rd Cir. 2001). The arbitration agreement expressly extends to claims that might involve "any disputes you may have with our…assignees" and, more specifically, "any dispute arising from the collection of amounts you owe in connection with your Account." Claims against the assignee, Cardworks, may be compelled to arbitration as the arbitration agreement states:

> "This agreement to arbitrate Claims includes all controversies and claims of any kind between us. It also includes any disputes you have with our agents, contractors, employees, officers, or assignees, any merchants with whom you use the Account, any credit-reporting agencies to whom we report the

>Account or any other third party that has been involved or becomes involved with…your Account."

Additionally, it is of no consequence that Merrick Bank updated or modified the agreement March of 2007 as Merrick Bank mailed a copy of the modification to Plaintiff and Plaintiff continued to use the credit card subsequent to each update.  See: Eze v. JP Morgan Chase Bank, NA, 2010 U.S. Dist. LEXIS 82088 (E.D.N.Y. Aug. 10, 2010) ("Using a credit card and making payments to the credit provider binds the cardholder to the terms and conditions of card use." (citing Grasso v. First USA Bank, 713 A.2d 304, 309 (Del. Super. Ct. 1998)).

The scope of the arbitration agreement thrusts the Plaintiff's claims squarely within its coverage.  No reasonable interpretation of the arbitration agreement can deny its coverage of the Plaintiff's claims against Cardworks.  The arbitration agreement was designed to cover the present claims and disputes between the Plaintiff and the Defendant, and this Court should compel the Plaintiff to resolve these claims through binding arbitration as required by the terms of Plaintiff's own credit card agreement.

5. **Defendant has Complied with the Timeliness Requirement Contained in the Arbitration Agreement**

According to the terms of the arbitration agreement, "any demand for arbitration that is made after a lawsuit or other legal proceeding has begun must be made within 90 days following the service of the complaint."  Cardworks was served with Plaintiff's Complaint on August 6, 2010.  On September 9, 2010, demand was made upon Plaintiff, through his counsel of record, to arbitrate his claims.  As a result, Cardworks has satisfied the timeliness requirement necessary to pursue arbitration as described in the arbitration agreement.

**6.   The Entire Action Should Be Stayed Pending Arbitration**

Section 3 of the FAA, 9 U.S.C. §3, mandates a stay of all claims submitted to compulsory arbitration.  If the Court grants this Motion to Compel Arbitration, Cardworks respectfully requests that the Court also stay all further proceedings in this case, including discovery, until further order of the Court.

**III.   CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion to Compel Arbitration by ordering the Plaintiff and Defendant to arbitrate their disputes pursuant to the credit card agreement and stay all further proceedings, including all discovery, between the parties.

Respectfully submitted,

**MAURICE & NEEDLEMAN, P.C.**

/s/ *JOANN NEEDLEMAN*

_____
JOANN NEEDLEMAN (74276)
935 One Penn Center
1617 John F. Kennedy Blvd
Philadelphia, PA 19103
(215) 789-7151
(215) 563-8970
joann@mnlawpc.com
*Attorney for Defendant,*
*Cardworks Servicing LLC*

Date: November 1, 2010

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HORNICEK, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION NO. |
| vs. | 2:10-cv-03631-LP |
| CARDWORKS SERVICING, LLC | CLASS ACTION |
| Defendant. | |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct of the foregoing Memorandum of Law in Support of

Defendant's Motion to Compel Arbitration and Stay Proceedings was served on this date via the

electronic filing system addressed to the following:

CARY L. FLITTER
LUNDY FLITTER BELDECOS & BERGER PC
450 N. NARBERTH AVE
NARBERTH, PA 19072
*Attorney for Plaintiff*

THEODORE E. LORENZ
LUNDY FLITTER BELDECOS & BERGER
450 NORTH NARBERTH AVENUE
NARBERTH, PA 19072
*Attorney for Plaintiff*

                                                                 /s/ *JOANN NEEDLEMAN*
                                                                 _____
                                                                 JOANN NEEDLEMAN (74276)

Dated:  November 1, 2010