# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HORNICEK, on behalf of himself and all others similarly situated, 683 Shropshire Drive West Chester, PA 19382 <br><br> Plaintiff, <br> vs. <br><br> CARDWORKS SERVICING, LLC 225 West Station Square Drive Pittsburgh, PA 15219 <br><br> Defendant. | CIVIL ACTION NO. 2:10-cv-03631-LP <br><br> CLASS ACTION |

## DECLARATION OF JOHN H. BEDARD, JR.

I, John H. Bedard, Jr., do hereby state in my place as counsel for Defendant Cardworks Servicing, LLC, as follows:

1.

My name is John H. Bedard, Jr. I am counsel for Defendant Cardworks Servicing, LLC. I am over 18 years of age and am competent to testify to the statements set forth in this Declaration. This declaration is based upon my own personal knowledge and if called upon to testify, the content of this declaration would be my testimony as to the things stated herein.

2.

On September 9, 2010, I sent Anthony Hornicek, via his counsel of record, written correspondence demanding that Mr. Hornicek's claims be adjudicated via arbitration and invoking the terms of Mr. Hornicek's arbitration agreement.

3.

Attached hereto as Exhibit "A" is a true and correct copy of the arbitration demand I sent to counsel.

Dated this 7th day of October, 2010.

_____
John H. Bedard, Jr.
Georgia Bar No. 043473

Sworn to and subscribed before me,

This 7th day of October, 2010.

_____
NOTARY PUBLIC

My commission expires: 9/9/12

(seal)

# EXHIBIT "A"



**BEDARD LAW GROUP, P.C.**

John H. Bedard, Jr.
Attorney at Law
Licensed Only In Georgia.

tel 678.253.1871 ext. 244
fax 678.253.1873

2810 Peachtree Industrial Blvd.
Suite D
Duluth, Georgia 30097
jbedard@bedardlawgroup.com
www.bedardlawgroup.com

September 9, 2010

Cary L. Fitter
Theodore E. Lorenz
Lundy, Flitter, Beldecos & Berger, P.C.
450 N. Naberth Avenue
Naberth, Pennsylvania 19072

Re:   *Anthony Hornicek v. Cardworks Servicing, LLC*,
      United States District Court for Eastern District of Pennsylvania,
      2:10-CV-03631-LP

Gentlemen:

Thank you for your courtesy during our recent telephone conference. As you know, our firm has been contacted to become involved in the defense of this case and we expect to be asking the court for admission *pro hac vice* shortly. Please accept this correspondence as Cardworks Servicing, LLC's election to proceed with arbitration in the above-referenced matter pursuant to the Arbitration Agreement contained in Mr. Hornicek's Cardholder Agreement. Please advise as to whether you will consent to move forward with arbitration (thus staying all further proceedings in the federal court) and we will have a consent order prepared and send it to you for your approval. Please advise as to your client's position no later than September 24, 2010

Thank you in advance for your time and attention to this matter and please feel free to contact me with any questions that you may have.

Very truly yours,

John H. Bedard, Jr.

Enclosure: Merrick Bank Visa/MasterCard Cardholder Agreement

Cc: Alfred Kiefer
    Joann Needleman

DECLARATION OF JOHN H. BEDARD, JR.                    EXHIBIT A

### Merrick Bank Visa® or MasterCard® Cardholder Agreement
### THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE AND A CLASS ACTION WAIVER

**1. Certain Definitions.** In this Agreement the words "you" and "your" refer to the persons (including the applicant, joint applicant and any authorized users) who have applied for and have accepted or used the Visa or MasterCard credit card account ("Account") covered by this Agreement. The words "Merrick Bank," "Bank," "we," "our," and "us" refer to Merrick Bank Corporation. The word "card" means the Visa card(s), MasterCard card(s) and other credit devices issued in connection with your Account, including renewal and replacement Cards. If your Account is secured or partially secured, the term "Deposit Account" refers to the Merrick Bank Secured Card Savings Account opened as security for your Account, as described in Section 17 of this Agreement. The term "Pricing Appendix" refers to the enclosed pricing sheet, which appears on the back of the document to which your credit card is attached. The Pricing Appendix is an important part of this Agreement and is incorporated into and made part of this Agreement by reference.

**2. Important.** This is the Agreement that will govern your Account with the Bank. You agree to use the Account and Card for consumer purposes only and not for business or commercial purposes. You agree to use the account for consumer purposes only and not for business or commercial purposes. This is a joint Account if the application was made in the name of at least two persons. The people in whose names the application was made are joint account holders. Each joint account holder will be responsible for repayment of all amounts due on the Account, even if the Account is used by only one of the joint account holders. If this is a joint Account, any of the joint account holders may request that the Account be closed, and the Bank will honor that request without any liability to the other. You must sign the back of your Card in order to use it. If you have not used your Card to make a Purchase or to obtain a Cash Advance, you may cancel your Account without liability or obligation at any time during the 90-day period following your receipt of the Card by calling (800) 253-2322 or by writing to us at P.O. Box 9201, Old Bethpage, NY 11804-9002. Your use of the credit associated with your Account, including the maintenance of any outstanding balance in your Account, shall constitute your acceptance of the terms of this Agreement. Subject to the terms of this Agreement, the Card will be valid through the expiration date printed on the face of the Card. If you do not make a payment, or if you do not use your Card to make any Purchase or to obtain any Cash Advance within 90 days following your receipt of the Card, we may close your Account.

**3. Purchases.** Your Account allows you to buy goods and services any place Cards are honored. Such transactions are called "Purchases." All Purchases are subject to your available total credit limit and the terms and conditions of this Agreement. The Bank reserves the right to deny authorization for any requested charge. You agree not to use your Account to make payments on your Account.

**4. Cash Advances.** Your Account also allows you to obtain "Cash Advances." Cash Advance transactions include, but are not limited to, cash advances from merchants or ATMs, balance transfers, person-to-person cash advances, and all other money transfer money orders, tax payments, the purchase of traveler's checks, the purchase of foreign currency, and legalized betting activities. We may permit you to obtain Cash Advances from time to time in the following ways:
• From or through any institution, merchant or entity that displays the Visa or MasterCard logo, as applicable, and offers Cash Advances.
• From any authorized automated teller machine ("ATM").

All Cash Advances are subject to: (i) your available total credit limit; (ii) your available Cash Advance credit limit; and (iii) the terms and conditions of this Agreement. The Bank reserves the right to deny authorization for any requested Cash Advance, or to elect, in its sole discretion, to treat any Cash Advance as a Purchase without waiving its right to treat any or all other Cash Advances as Cash Advances, as set forth in this Agreement.

**5. Total Credit Limit.** The Bank has established a total credit limit for your Account. Your total credit limit will be shown on your monthly statement. (The monthly statements are called "periodic statements" and the monthly interval between periodic statements is called a "billing cycle.") Your Account balance may not exceed your total credit limit. If you exceed your total credit limit, the Bank reserves the right to refuse to honor any new Purchases or Cash Advances until the balance of your Account falls below your total credit limit. If you exceed your total credit limit, you agree to return your Card to the Bank, at the Bank's request. Subject to applicable law, we reserve the right from time to time, and without notice, to increase or decrease your total credit limit. Subject to our review and approval, you may, if your Account is secured or partially secured, increase your credit limit by making additional deposits into the Deposit Account; any such additional deposits must be in increments of $50, and the balance in the Deposit Account may not exceed an amount that together with any unsecured credit available to you through your account would cause your total credit limit to exceed the amount of $5,000 without our approval.

**6. Promise to Pay.** You promise to pay, according to the terms of this Agreement, all amounts owing under your Account and this Agreement including, without limitation, the total amount of all Purchases, Cash Advances, finance charges and all other charges and fees set forth in this Agreement. If you have requested a Card for use by someone else, you will be responsible for that person's transactions, including charges for which you may not have intended to be liable.

**7. Unauthorized Use.** You agree to report any loss or theft of the Card, as soon as practicable after you become aware of such loss or theft, by calling the Bank's Customer Service Department at (877) 727-6881 or by writing to Merrick Bank, P.O. Box 9201, Old Bethpage, NY 11804-9002. You may be liable for the unauthorized use of your Card, but you will not be liable for use that occurs after you notify the Bank orally or in writing of the loss, theft, or unauthorized use of the Card. You will not be liable for any unauthorized Visa or MasterCard Transactions posted to your Account provided you were not grossly negligent or fraudulent in handling the Account or the Card, as reasonably determined by the Bank based upon substantial evidence. You agree to cooperate with the Bank during its investigation of any unauthorized use and agree to assign to us any claims you may have against any third party related to the unauthorized use. For purposes of this Agreement, transactions are "Visa or MasterCard Transactions" only if they are processed by the Visa or MasterCard system. "Visa or MasterCard Transactions" do not include any cash disbursements received from automated teller (or similar) machines or commercial card transactions.

**8. Statements.** We will send a periodic statement for each month in which your Account has a debit (you owe the Bank) or a credit (the Bank owes you) balance in excess of $1, a balance upon which a finance charge is imposed or as otherwise required by applicable law. After one billing cycle if no other transactions are posted to your Account, the balance will be adjusted to zero. This periodic statement will show the total amount that you owe the Bank at the end of the current billing cycle (the "New Balance") and the transactions that have been registered (or "posted") to your account since your last periodic statement. The periodic statement will also show the minimum amount that you must pay to the Bank and the date on which your payment is due (the "Payment Due Date," which typically will be 25 days after the last day of the relevant billing cycle). Your failure to receive a statement for any reason will not relieve you of your duty to make payments as required under this Agreement. If we are unable to locate you, any credit balance in your Account will be escheated pursuant to applicable law.

You should review your periodic statement, including information regarding your Deposit Account, if any, carefully. If there is an error on your periodic statement and you do not advise the Bank of that error within 60 days after the Bank mails the periodic statement to you, you will be bound by what the periodic statement shows. You should also read carefully the billing dispute information provided in Section 29 of this Agreement. The Bank will mail the periodic statement to only one mailing address, even when it is a joint Account. You must notify us of any change in your mailing address. Except as required by law, we will not mail your statement to a third party. If you instruct us to mail your periodic statement to the address of any third party, and we are required by law to do so, we will not be responsible for your failure to receive, or your failure to receive in a timely manner, your periodic statement or any other information relating to your Account.

**9. Monthly Payments.** You can pay the New Balance in full every month or you can pay it in monthly installments. If you decide to pay the New Balance in installments, you must pay at least the Minimum Payment shown on your periodic statement, but you can choose to pay more. The Minimum Payment shown on your periodic statement will be calculated as shown in the "Fees and Payments" section of the Pricing Appendix. If your New Balance is less than the Minimum Payment amount, you must pay the full amount of your New Balance. If you pay more than the Minimum Payment shown on your periodic statement, you must still pay at least the Minimum Payment each time we send you a subsequent statement. Any interest or fee reversals or purchase return credits posted to your Account will not alter the Minimum Payment due.

**10. Making Payments.** You should send your payments, along with the return portion of your periodic statement, to the remittance address shown on your periodic statement or at any address other than that designated in your periodic statement may create a delay in posting the payment to your Account and could thus result in the imposition of a late payment fee and additional finance charges. We can accept late or partial payments without losing any of our rights under this Agreement. You agree not to send us partial payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" or the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount, must be mailed or delivered to us at Merrick Bank, Attn: Area 51, P.O. Box 5000, Draper, UT 84020-5000.

You must make payments in U.S. Dollars, with a draft, money order or check drawn on a U.S. Bank or the U.S. post office, or through an automated clearing house acceptable to us in our sole discretion. Merrick Bank processes electronic check conversions. If you send us a check, it may be converted into an electronic funds transfer (EFT). This means that we may take information from your check (including, for example, your bank routing number, checking account number, and check number) to initiate an EFT from your checking account in the amount of your check, instead of submitting your check for processing and payment. With electronic check conversion, you will not receive your cancelled check back, but your checking account statement should show you the EFT we initiated using information on your check. Funds may be debited faster from your checking account (often within 24 hours) with electronic check conversion than if we submit your check for processing and payment. If we are unable to process the EFT (for example, for technical reasons), we may submit either your original check or a copy of your original check to your bank for payment and processing. If, at any time, you do not wish to participate in Merrick Bank's check conversion program, please send a written request to remove you from this program to Merrick Bank, P.O. Box 9201, Old Bethpage, NY 11804-9002. We may take up to 30 days after we receive your written request to process it. Any checks we receive from you during that period that are to be converted into an EFT may not be covered by your written request. With regard to each payment or credit, we will decide the order in which Purchases, Cash Advances, finance charges, fees, and costs are paid, subject to any restrictions under applicable law. Whenever we receive a payment, the payment will be credited promptly, as required by applicable law. Payments received with the return portion of your periodic statement and received by 12:00 p.m. (noon), local time of the payment address indicated on the relevant periodic statement, will be posted to your Account as of that date. For security reasons, however, we reserve the right to delay increasing the amount of credit available through your Account as a result of any payment or credit posted to your Account for up to eleven days following the date on which (and not as of which) such payment or credit is actually posted to your Account. This delay in increasing your available credit will not affect the proper crediting of your payment or credit to Purchases, Cash Advances, and finance charges, and will not alter the calculation of finance charges.

**11. Periodic Finance Charges.** Periodic finance charges on your Account will be determined by applying a periodic rate to one or more average daily balances (including current transactions). The average daily balances of Purchases and Cash Advances (each of

which is called "Balance on Which Finance Charge Applied" on the front of your periodic statement) are calculated separately. The "Purchase Finance Charge Balance" described below, is multiplied by the applicable daily periodic rate, then multiplied by the number of days in the billing cycle. The "Cash Advance Finance Charge Balance," described below, is multiplied by the applicable daily periodic rate, then multiplied by the number of days in the billing cycle. The results of these two calculations are then added together to determine the total periodic finance charge. You will not be assessed a periodical finance charge on new Purchases in the billing cycle in which they are posted to your Account if you pay the entire New Balance, if any, shown on the periodic statement for the preceding billing cycle by its Payment Due Date.

To calculate the "Cash Advance Finance Charge Balance," we first calculate the daily balance of Cash Advances and billed but unpaid Cash Advance Transaction Fees, Cash Advance finance charges and Currency Conversion Charges related to Cash Advances (collectively, "Cash Advances and Cash Advance Fees") for each day during the relevant billing cycle by taking the beginning balance of Cash Advances and Cash Advance Fees in your Account each day during that billing cycle, adding to that amount any new Cash Advances and Cash Advance Fee transactions for that day, and subtracting from that amount any payments or credits applied that day to Cash Advances and Cash Advance Fees. This gives us the Cash Advance daily balance for each day in the billing cycle. Credit balances (the Bank owes you) are treated as zero balances for these calculations. We then add up all the Cash Advance daily balances for that billing cycle and divide that total by the number of days in the billing cycle. This gives us the "Cash Advance Finance Charge Balance." If a transaction occurs in one billing cycle but is not posted to your Account until the next billing cycle, the transaction is included in the calculation of the Cash Advance Finance Charge Balance as of the first day of the billing cycle in which the transaction is posted to your Account.

To calculate the "Purchase Finance Charge Balance," we first calculate the daily balance of Purchases and billed but unpaid Annual Fees (including Additional Card Increments), Late Payment Fees, Returned Item Fees, Over Limit Fees, Copying Charges, Currency Conversion Charges related to Purchases, Pay-by-Phone Fees that were billed to your Account, Replacement Card Fees, Reinstatement Fees, and Purchase finance charges (collectively the "Purchases and Purchase Fees") for each day during the relevant billing cycle (collectively, the "Purchases and Purchase Fees Daily Balance") by taking the beginning balance of Purchases and Purchase Fees in your Account each day during that billing cycle, adding to that amount any new Purchases and Purchase Fee transactions for that day, and subtracting from that amount any payments or credits applied that day to Purchases and Purchase Fees. This gives us the Purchases and Purchase Fees Daily Balance for each day in the billing cycle. Credit balances (the Bank owes you) are treated as zero balances for calculations. We then add up all the Purchases Daily Balances for that billing cycle and divide that total by the number of days in the billing cycle. This gives us the "Purchase Finance Charge Balance." If a transaction occurs in one billing cycle but is not posted to your Account until the next billing cycle, the transaction is included in the calculation of the Purchase Finance Charge Balance as of the first day of the billing cycle in which the transaction is posted to your Account. We exclude new Purchases and Purchase Fees from the Purchases and Purchase Fees Daily Balance if you pay the entire New Balance, if any, shown on the periodic statement for the preceding billing cycle by its Payment Due Date.

12. Periodic Rate for Purchases. If your Account has an Introductory Annual Percentage Rate for Purchases, that rate, together with the Introductory Daily Periodic Rate for Purchases, is shown in the "Introductory Rate Information" section of the Pricing Appendix. The Introductory Annual Percentage Rate for Purchases is a fixed rate and is not based on movements in the Prime Rate, described below.

Absent circumstances that trigger the application of the Default APR for Purchases, as defined and described below, the Introductory Annual Percentage Rate for Purchases will be in effect until the Introductory Period End Date shown in the Introductory Rate Information section of the Pricing Appendix. After the Introductory Period End Date, your daily periodic rate and corresponding Annual

Percentage Rate ("APR") for Purchases will vary and will be determined as described below.

If your Account does not have an Introductory Annual Percentage Rate for Purchases or after the Introductory Period End Date (as applicable), the daily periodic rate for Purchases is 1/365th of the corresponding APR for Purchases. The corresponding APR for Purchases normally is determined by adding the Purchase Margin shown in the "Variable Rate Information" section of the Pricing Appendix to the "Prime Rate," which is described below (the "Purchase APR"). The "Annual Percentage Rates" section of the Pricing Appendix includes the Purchase APR and its corresponding Daily Periodic Rate for Purchases, each current as of the date indicated in the Pricing Appendix.

The APR for Purchases may be determined by adding the Default Margin shown in the "Variable Rate Information" section of the Pricing Appendix to the Prime Rate (the "Default APR for Purchases"), as of the start of the billing cycle in which any one of the following events occurs: (i) you fail to pay at least the Minimum Payment due for any billing cycle within two billing cycles of when that Minimum Payment first became due; (ii) you fail to honor any other obligation (other than paying the Minimum Payment due) under this Agreement; (iii) you die or become the subject of any insolvency or bankruptcy proceeding; (iv) you default in the performance of any of your obligations in connection with any other account you have with us; or (v) you fail to pay at least the Minimum Payment due for any billing cycle by the relevant Payment Due Date two times in any rolling (consecutive) six billing cycles. In calculating the daily periodic rate applicable to the Default APR for Purchases, the rounding conventions used by our computers may cause the daily periodic rate to be 1/100,000th less than the actual value of the rate divided by 365. We may use this slightly lower rate to determine your finance charge. We will ensure that the rounding conventions do not cause the rate we use to be higher than the disclosed Default APR for Purchases. The "Annual Percentage Rates" section of the Pricing Appendix includes the Default APR for Purchases and its corresponding Daily Periodic Default Rate for Purchases, each current as of the date indicated in the Pricing Appendix. If at any time you become obligated to pay interest on your Account at the Default APR for Purchases, and you thereafter make payments on your Account as required by this Agreement in a timely manner for three consecutive billing cycles, the corresponding APR for Purchases will return to the Purchase APR, and the foregoing sentences of this paragraph again shall apply.

The Purchase APR shall never be greater than the lesser of the Purchase APR Cap shown in the "Variable Rate Information" section of the Pricing Appendix or the maximum rate permitted by applicable law. The Default APR for Purchases shall never be greater than the lesser of the Default APR Cap shown in the "Variable Rate Information" section of the Pricing Appendix or the maximum rate permitted by applicable law. The Default APR shall never be less than the Purchase APR Floor shown in the "Variable Rate Information" section of the Pricing Appendix. The Default APR for Purchases shall never be less than the Default APR Floor for Purchases shown in the "Variable Rate Information" section of the Pricing Appendix.

Either an increase in the Prime Rate or your failure to pay your Account in a timely manner may result in an increase in any or all of the following: the amount of the periodic finance charge; the Minimum Payment; or the outstanding balance.

The "Prime Rate" used to determine your Purchase APR and your Default APR for Purchases is the Prime Rate published in the "Money Rates" table of The Wall Street Journal on the last business day of each month (the "Change Date"). Any change in the Prime Rate from the previous Change Date will cause the corresponding Purchase APR or Default APR for Purchases (as applicable) to be adjusted as of the first day of your billing cycle that ends in the following month.

13. Periodic Rate for Cash Advances. If your Account has an Introductory Annual Percentage Rate for Cash Advances, that rate, together with the Introductory Daily Periodic Rate for Cash Advances, is shown in the "Introductory Rate Information" section of the Pricing Appendix. The Introductory Annual Percentage Rate for Cash Advances is a fixed rate and is not based on movements in

the Prime Rate, described below.

Absent circumstances that trigger the application of the Default APR for Cash Advances, as defined and described below, the Introductory Annual Percentage Rate for Cash Advances will be in effect until the Introductory Period End Date shown in the "Introductory Rate Information" section of the Pricing Appendix. After the Introductory Period End Date, your daily periodic rate and corresponding APR for Cash Advances will vary and will be determined as described below.

If your Account does not have an Introductory Annual Percentage Rate for Cash Advances or after the Introductory Period End Date (as applicable), the daily periodic rate for Cash Advances is 1/365th of the corresponding APR for Cash Advances. The corresponding APR for Cash Advances normally is determined by adding the Cash Advance Margin shown in the "Variable Rate Information" section of the Pricing Appendix to the "Prime Rate," which is described below (the "Cash Advance APR"). The "Annual Percentage Rates" section of the Pricing Appendix includes the Cash Advance APR and its corresponding Daily Periodic Rate for Cash Advances, each current as of the date indicated in the Pricing Appendix.

The APR for Cash Advances may be determined by adding the Default Margin shown in the "Variable Rate Information" section of the Pricing Appendix to the Prime Rate (the "Default APR for Cash Advances"), as of the start of the billing cycle in which any one of the following events occurs: (i) you fail to pay at least the Minimum Payment due for any billing cycle within two billing cycles of when that Minimum Payment first became due; (ii) you fail to honor any other obligation (other than paying the Minimum Payment due) under this Agreement; (iii) you die or become the subject of any insolvency or bankruptcy proceeding; (iv) you default in the performance of any of your obligations in connection with any other account you have with us; or (v) you fail to pay at least the Minimum Payment due for any billing cycle by the relevant Payment Due Date two times in any rolling (consecutive) six billing cycles in calculating the daily periodic rate applicable to the Default APR for Cash Advances, the rounding conventions used by our computers may cause the daily periodic rate to be 1/100,000th less than the actual value of the rate divided by 365. We may use this slightly lower rate to determine your finance charge. We will ensure that the rounding conventions do not cause the rate we use to be higher than the disclosed Default APR for Cash Advances. The "Annual Percentage Rates" section of the Pricing Appendix includes the Default APR for Cash Advances and its corresponding Daily Periodic Default Rate for Cash Advances, each current as of the date indicated in the Pricing Appendix. If at any time you become obligated to pay interest on your Account at the Default APR for Cash and you thereafter make payments on your Account as required by this Agreement in a timely manner for three consecutive billing cycles the corresponding APR for Cash Advances will return to the Cash Advance APR, and the foregoing sentences of this paragraph again shall apply.

The Cash Advance APR shall never be greater than the lesser of the Cash Advance APR Cap shown in the "Variable Rate Information" section of the Pricing Appendix or the maximum rate permitted by applicable law. The Default APR for Cash Advances shall never be greater than the lesser of the Default APR Cap shown in the "Variable Rate Information" section of the Pricing Appendix or the maximum rate permitted by applicable law. The Cash Advance APR shall never be less than the Cash Advance APR Floor shown in the "Variable Rate Information" section of the Pricing Appendix. The Default APR for Cash Advances shall never be less than the Default APR Floor for Cash Advances shown in the "Variable Rate Information" section of the Pricing Appendix.

Either an increase in the Prime Rate or your failure to pay your Account in a timely manner may result in an increase in any or all of the following: the amount of the periodic finance charge; the Minimum Payment; or the outstanding balance.

The "Prime Rate" used to determine your Cash Advance APR and your Default APR for Cash Advances is the Prime Rate published in the "Money Rates" table of The Wall Street Journal on the last business day of each month (the "Change Date"). Any change in the Prime Rate from the previous Change Date will cause the corresponding Cash Advance APR or Default APR for Cash Advances

(as applicable) to be adjusted as of the first day of your billing cycle that ends in the following month.

14. **Other Finance Charges.** These transaction fees will be added to the appropriate purchase or cash advance balance with corresponding Purchase or Cash Advance. These transaction fees may cause the Annual Percentage Rate on the billing statement on which the purchase or cash advance first appears to exceed the Nominal Annual Percentage Rate for Purchases and Cash Advances.

a. <u>Minimum Finance Charge.</u> In any billing cycle in which your Account has a balance, the periodic finance charge for cash advances and purchases is less than $1.00, and you were not charged a Cash Advance Transaction Fee, a *Minimum FINANCE CHARGE*, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, may be charged to your Account.

b. <u>Cash Advance Transaction Fee.</u> A Cash Advance Transaction Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix* will be charged to your Account as a FINANCE CHARGE each time you obtain a Cash Advance.

c. <u>Replacement Card Fee.</u> A Replacement Card Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, may be charged to your Account as a FINANCE CHARGE if your Card or PIN is lost or stolen or you request a replacement Card or PIN for any reason.

d. <u>Reinstatement Fee.</u> A Reinstatement Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, may be charged to your Account as a FINANCE CHARGE if your Account is closed for any reason and, at your request, we agree to reinstate it.

e. <u>Transaction Fee for Purchases and Cash Advances made in Foreign Currencies.</u> Purchases and Cash Advances made in currencies other than U.S. Dollars will be converted to U.S. Dollars under the operating regulations or foreign currency conversion procedures established by Visa International or MasterCard International then in effect. Conversion to U.S. Dollars may occur on a date other than the date of the transaction; therefore, the currency conversion rate may be different from the rate in effect at the time of the transaction. We do not determine the currency conversion rate that is used. You agree to pay the converted amount. For each Purchase or Cash Advance made in a foreign currency, we add an additional FINANCE CHARGE of 2% of the amount of the Purchase or Cash Advance after its conversion into U.S. Dollars.

f. <u>Account Set-up Fee.</u> An *Account Set-up Fee*, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, may be charged to your Account as a FINANCE CHARGE.

15. **Default.** If: (i) you miss a payment on your Account; (ii) you default in the performance of any of your obligations in connection with any other account you may have with us; (iii) you fail to honor any other obligation (other than paying the Minimum Payment due) under this Agreement; (iv) you die or become the subject of any insolvency or bankruptcy proceeding; or (v) you fail to pay at least the Minimum Payment due for any billing cycle by the relevant Payment Due Date two times in any rolling (consecutive) six billing cycles; you will be in default and the Bank reserves the right to (1) refuse to honor any further Purchases or Cash Advances, (2) reduce your credit limit, (3) require payment of a portion of your outstanding balance greater than the Minimum Payment, (4) begin charging interest at the Default APR for Purchases and the Default APR for Cash Advances, and/or (5) declare the entire balance of your Account immediately due and payable. In addition, if the Bank considers you not to be creditworthy the Bank reserves the right to (A) refuse to honor any further Purchases or Cash Advances, and/or (B) reduce your credit limit. A default by any cardholder will be a default by all cardholders. The Bank's failure to exercise any of its rights under this Agreement or its waiver of its rights on any one occasion, shall not constitute a waiver of such rights on any other occasion. All rights and remedies of the Bank are cumulative and may be pursued singularly, successively or together, at its sole option. In determining your creditworthiness, the Bank, in its discretion, may consider, among other things, the total amount of debt you are carrying compared to your resources or any other of your credit characteristics, regardless of your performance on the Account.

16. **Revocation.** Subject to applicable law, the Bank may revoke your Card and/or cancel or suspend your credit privileges at any time, with or without cause and without giving notice. You may not use your Card after it has expired, or after it has been revoked or after your Account has been closed. Any such action on the part of the Bank will not affect your obligation to pay the outstanding balance, finance charges and other charges due on your Account under the terms of this Agreement. You agree to pay to the Bank all such obligations despite any cancellation or suspension of your Account.

17. **Deposit Account (for secured and partially-secured Accounts only).** As a condition to our approving and establishing your Account: (i) you agree to create a Deposit Account, which you shall maintain with us and cause to remain unencumbered, except for the security interest granted to the Bank pursuant to this Agreement (for example, you shall not allow the Deposit Account to become subject to any nonconsensual lien, judgment, attachment or execution); and (ii) you hereby grant to the Bank a security interest in the Deposit Account to secure performance by you of all of your obligations with respect to the Account and otherwise under this Agreement, including, without limitation, the obligation to make payments to the Bank as described herein. You further agree to maintain a daily balance in the Deposit Account in an amount at least equal to the total credit limit of the Account, unless we specifically agree otherwise with you.

If: (i) you default in the performance of any of your obligations with respect to the Account or otherwise under this Agreement (including, without limitation, failing to make payment when due); or (ii) the Account is closed by you or us for any reason, you authorize us to apply all or any part of the funds in the Deposit Account against all amounts owed on the Account and any other outstanding obligation owed to the Bank, including, without limitation, any part, of your outstanding Account balance in connection with which any claim under a credit insurance policy is pending. If we elect not to, or otherwise fail to apply funds in the Deposit Account against amounts owed on the Account or any other outstanding obligation owed to the Bank, you agree that: (1) we do not thereby waive any right we have to do so at any later date, and may so apply such funds at any time, in our sole discretion; and (2) you are not thereby excused from the performance of any obligation owing with respect to the Account or otherwise under this Agreement. If, however, (A) the Account is closed by you or by us for any reason, and (B) we fail to apply the funds in the Deposit Account against amounts owed on the Account or otherwise to us, you may request, in writing, that we apply the funds in the Deposit Account against such amounts. We will honor any such written request within five (5) business days after we receive it at the address set forth in Section 29 of this Agreement if the amount in the Deposit Account exceeds the amount you owe the Bank, then, unless you instruct us otherwise, we will handle the funds remaining in the Deposit Account in accordance with the terms of the following paragraph.

After the Account has been closed and you have paid all amounts owed in connection therewith or otherwise under this Agreement, we can hold the funds in the Deposit Account until the earlier of the following: (1) we elect, in our discretion, to close the Deposit Account and return the funds to you; or (2) not more than ninety (90) days after we receive from you a written request to return any funds remaining in the Deposit Account, together with all unexpired Cards (if any), cut in half.

18. **Illegal Transactions.** You promise not to use your Card or the Account for any illegal or unlawful purpose. However, if you use, or allow someone else to use, your Card or the Account for any unlawful purpose, you will be responsible for such use and may be required to reimburse the Bank, Visa or MasterCard for all amounts or expenses the Bank, Visa or MasterCard pays as a result of such use. You understand that it is your responsibility to determine if the transactions for which you use or allow someone else to use your Card or the Account are lawful and that neither the Bank nor Visa or MasterCard are responsible for determining the legality of such transactions.

19. **Collection Costs.** In the event you default in the performance of any of your obligations under this Agreement, and the Account is referred to an attorney, including one who is a salaried employee of the Bank or its assignee, you agree to pay court costs and collection expenses allowed by law, including reasonable attorney's fees. You also agree to pay any collection fees or costs associated with the Deposit Account.

20. **Other Charges.** In addition to finance charges, the Bank may impose and post the following charges to your Account.

a. <u>Annual Fee (if applicable).</u> You agree to pay an Annual Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, on this Account. In addition, the Annual Fee will be increased by the amount of the *Additional Card Increment*, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, for each additional Card issued. You agree to pay the Annual Fee for each year the Account is open and for each year in which there is an outstanding balance on the Account. Annual Fees are payable whether or not you use your Card, and do not assure you of good standing on the Account. For the first year in which the Account is open, the Annual Fee is billed to the Account in full, in advance. For each subsequent year, the Annual Fee will be divided by 12 and billed to the Account on a monthly basis. If the Account is closed but you fail to pay off the full Account balance, you agree to pay: (i) that portion of your Account balance that relates to any Annual Fee billed to your Account; and (ii) the amount of any Annual Fee or portion thereof subsequently billed to your Account, which will occur each month there is an outstanding balance on your Account following the one year anniversary of when your Account is first opened. The Additional Card Increment will continue to be billed after the Account is closed for up to two months while we adjust your Account records.

b. <u>Late Payment Fee.</u> If the Bank does not receive at least your Minimum Payment on or before the relevant Payment Due Date, you agree to pay the Bank a Late Payment Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, in connection with that payment.

c. <u>Returned Item Fee.</u> You agree to pay the Bank a Returned Item Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, if for any reason, (a) a check, draft or similar instrument is not honored or cannot be processed; or (b) an electronic debit is returned unpaid or cannot be processed. You authorize us to resubmit returned payments in our discretion. At our option, we will assess this fee the first time your payment is not honored or paid, even if it is later honored or paid following resubmission. Any check, draft or similar instrument may be collected electronically if returned for insufficient or uncollected funds.

d. <u>Over Limit Fee.</u> You agree to pay an Over Limit Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, for each billing cycle during which the balance of your Account exceeds your total credit limit at any time. You agree to pay this fee even if we authorize the transaction that causes your Account balance to exceed your total credit limit or if we cause your Account to exceed your total credit limit by posting fees to your Account.

e. <u>Copying Charges.</u> You agree to pay a Copying Charge, as shown in the *"Fees and Payments"* section of the *Pricing Appendix* for each page of any copy of a periodic statement, sales slip or payment copy that the Bank produces at your request. The Bank will not impose copying charges if it produces the copies in order to resolve a reported billing error under the Fair Credit Billing Act.

f. <u>Pay-by-Phone Fee.</u> You agree to pay a Pay-by-Phone Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, for each pay-by-phone payment you initiate. This fee will be payable at the time the payment is initiated and is in addition to the amount you wish to have applied to your Account.

g. <u>Fees for other services.</u> We may charge you fees for services you request associated with your Account. These types of fees will be charged at your request after having an opportunity to decline the service.

21. **Controlling Laws.** This Agreement shall be governed by and construed in accordance with federal law and any applicable laws of the State of Utah without regard to rules concerning conflicts of law or choice of law.

22. **Agreement to Arbitrate Disputes and Class-Action Waiver.**

This Section 22 is an agreement to arbitrate disputes

DECLARATION OF JOHN H. BEDARD, JR.                                                                                                                                   EXHIBIT A

("Arbitration Agreement") that may arise as a result of the Agreement or your Account. Read this Section 22 carefully. You may reject this Arbitration Agreement by notifying us in writing within 60 days using the procedure set forth at the end of this Section. If a dispute arises that is covered by this Arbitration Agreement, you may be required to settle the dispute through binding arbitration. This means that you will not be able to have the dispute settled by trial or before a jury or to participate in a class action in court or a class-action or consolidated arbitration. Other rights that you would have if you went to court may not be available or may be more limited in arbitration, including your right to appeal.

In consideration for our willingness to provide you with an Account as set forth in the Agreement, you and we agree as follows:

Any claim, dispute or controversy ("Claim") by either you or us against the other arising from or relating in any way to the Agreement or your Account, except for the validity, scope or enforceability of this Arbitration Agreement, shall, at the demand of any party, be resolved by binding arbitration. However, we will not demand arbitration pursuant to this agreement to arbitrate in connection with any individual Claim that you properly file and pursue in a small-claims court of your state or municipality, so long as the Claim is pending only in that court. "Binding arbitration" means an arbitration proceeding before the National Arbitration Forum or the American Arbitration Association (each referred to herein as the "Arbitration Association") pursuant to the code of procedures of the Arbitration Association in effect at the time the Claim is filed (the "Arbitration Rules"). You may select which of these Arbitration Associations to use. If you fail to select the Arbitration Association in a timely manner, we will choose one. Any arbitration proceeding will take place at a location within the federal judicial district that includes the most recent U.S. Mail address we have on file for you at the time the Claim is filed or at any other mutually acceptable location. Any party to the arbitration proceeding may enter judgment upon the arbitration award in any court having jurisdiction over the arbitration award and may have that judgment enforced by any court having jurisdiction over that judgment.

A demand for arbitration under this agreement to arbitrate may be made either before or after a lawsuit or other legal proceeding begins. However, any demand for arbitration that is made after a lawsuit or other legal proceeding has begun must be made within 90 days following the service of a complaint, third-party complaint, cross-claim or counterclaim or any answer thereto or any amendment to any of the above.

This agreement to arbitrate Claims includes all controversies and claims of any kind between us. It also includes any disputes you have with our agents, contractors, employees, officers or assignees, any merchants with whom you use the Account, any credit-reporting agencies to whom we report the Account or any other third party that has been involved or becomes involved with, or whose trademarks are used in connection with, any purchasing, marketing, soliciting, servicing or credit-reporting activity relating to your Account.

The Claims covered by this agreement to arbitrate include, without limitation:

• Any disputes regarding: the application you prepared in connection with the issuance of your Account; any solicitation or advertising materials you received in connection with your Account; any activities relating to the maintenance or servicing of your Account; and any funds held by the Bank in connection with your Account;
• Any disputes arising from the collection of amounts you owe in connection with your Account;
• Any disputes concerning the dollar amount of payments made or transactions posted to your Account;
• Any disputes concerning the processing of items or funds transfers sent to the Bank for the purpose of posting to your Account.
• Any disputes regarding information obtained by us from, or reported by us to, credit bureaus or others; and
• Any disputes related to insurance or other services or products purchased from us in connection with your Account.

NO ARBITRATOR OR COURT MAY ORDER, PERMIT OR CERTIFY A CLASS ACTION, REPRESENTATIVE ACTION, PRIVATE ATTORNEY-GENERAL LITIGATION OR CONSOLIDATED ARBI-

TRATION IN CONNECTION WITH THIS AGREEMENT TO ARBITRATE. NO ARBITRATOR OR COURT MAY ORDER OR PERMIT A JOINDER OF PARTIES IN CONNECTION WITH THIS AGREEMENT TO ARBITRATE, EXCEPT FOR JOINDER OF ANY JOINT APPLICANT OR OTHER AUTHORIZED USER OF THE ACCOUNT, UNLESS BOTH YOU AND WE CONSENT TO SUCH JOINDER IN WRITING. BY ACCEPTING THIS ARBITRATION AGREEMENT, YOU AGREE TO WAIVE THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION, REPRESENTATIVE ACTION, PRIVATE ATTORNEY-GENERAL LITIGATION OR CONSOLIDATED ARBITRATION RELATED TO THIS AGREEMENT OR YOUR ACCOUNT.

The arbitrator will be required to follow relevant law and applicable judicial precedent to arrive at a decision and shall be empowered to grant whatever relief would be available in court. Where authorized by applicable law, the arbitrator's award may include attorneys' fees and other expenses. You and we both agree that the transactions subject to this agreement to arbitrate involve interstate commerce and that this agreement to arbitrate shall be governed by and enforceable under the Federal Arbitration Act.

The cost of any arbitration proceeding shall be divided as follows:

• If you initiate arbitration, you will be responsible for paying one half of the filing fee, or $125.00, whichever is less, when the demand for arbitration is made.
• If we initiate arbitration, we will be responsible for paying all arbitration costs.
• Regardless of who initiates the arbitration, you will not be responsible for any arbitration fees that exceed one half of the filing fee, or $125.00, whichever is less, or the fees that you would have incurred if the Claim had been brought in court.

Notwithstanding the foregoing, if you believe the cost of arbitration may be too burdensome, you may seek a waiver of the filing fee under the applicable Arbitration Rules. If you seek, but do not qualify for such a waiver, we will consider a written request from you to advance all or part of the filing fee.

The arbitrator's decision shall become final and binding after 30 days unless a party to the arbitration takes an appeal from the decision by making a written request to the Arbitration Association. The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitration, and will make decisions based on the vote of the majority. We will advance any fees and costs required by the Arbitration Association to commence any appeal. The appeal panel's decision shall be final and binding.

In the event of a conflict between the Arbitration Rules and this Arbitration Agreement, this Arbitration Agreement shall govern. This Arbitration Agreement shall not apply to any Claims as to which the limitations herein on class actions or class-action or consolidated arbitration are not permitted by applicable law. If any other provision of this agreement to arbitrate should be found invalid or unenforceable such a determination shall not affect the enforceability of the remaining provisions which shall remain and continue in full force and effect.

You may contact any of the Arbitration Associations to obtain information about arbitration, arbitration procedures and fees by calling the telephone numbers or going to their Internet websites indicated below:

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405-0191
800-474-2371
www.arb-forum.com

American Arbitration Association
335 Madison Avenue (10th Floor)
New York, NY 10017-4605
800-778-7879
www.adr.org

**RIGHT TO REJECT ARBITRATION**

YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATE, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this agreement to arbitrate, you must notify us in writing within sixty (60) days after the date your Account is opened. You must send your request to: Arbitration Manager, Merrick Bank, Legal Department, 10705 South Jordan Gateway, Suite 200, South Jordan, Utah 84095. The request must include your 16-digit Account number and a clear statement of your intent, such as "I reject the arbitration clause in the Merrick Bank Visa® or MasterCard® Cardholder Agreement."

23. Telephone Monitoring, Recording and Contacts. To ensure that all customers receive quality service, and payment-related calls are conducted in a manner consistent with Bank policy, the Bank randomly selects phone calls for monitoring and/or recording. These calls are monitored and/or recorded solely for evaluation by supervisors, training, monitoring for compliance purposes, and quality control, in order to help ensure that prompt, consistent assistance and accurate information are delivered in a professional manner. You agree that any call between a representative of the Bank and you may be monitored and/or recorded for these purposes. You further agree that: (i) you have an established business relationship with us and may be contacted from time to time regarding your Account; (ii) such contacts are not considered unsolicited or inconvenient; and (iii) any such contact may be made using any cellular or other number you may have given us, using any e-mail address you may have provided to us, or using an automated dialing and announcing or similar device, unless you notify us otherwise or unless otherwise prohibited by law.

In addition, in connection with any contact made with you by telephone, you agree that we may, in our discretion, engage the services of an unrelated third party for the sole purpose of providing language translation services.

24. Change In Terms. Subject to the limitations of applicable law, the Bank, at any time, may change or remove any of the terms and conditions of, or add new terms or conditions to, this Agreement, including (for example) increasing existing fees, charges, margins and rates, and adding new fees and charges, whether or not the Account has been cancelled, suspended or closed to new Account transactions. We will provide notice with respect to such changes as required by applicable law. The new terms may apply to new Purchases, Cash Advances, other charges and the outstanding balance of your Account.

25. Card Benefits. From time to time your Card may include various additional features, services and enhancements, including common carrier travel insurance, credit card registration for lost or stolen credit cards, and emergency cash service. The Bank is not liable for these features, services, and enhancements, and such features, services, and enhancements are the sole responsibility of the third party provider. You agree to hold the Bank harmless from any claims, actions, or damages resulting from your use of any of these features, services, or enhancements, when permitted by applicable law. The Bank reserves the right to adjust, add, or delete benefits and services at any time.

26. Acceptance of Card. The Bank is not responsible for the failure of any merchant or bank to accept or honor your Card. Unless applicable law otherwise requires, if you make a Purchase on your Account and the merchant discloses a policy such as "no returns," "no refund," "no return or credit without receipt," "as is," "store credit only," "all sales final" or similar statements, you will be bound by that policy.

27. Assignment. You may not sell, assign, or otherwise transfer this Agreement, the Deposit Account or the Account, or any portion thereof, without the express written consent of the Bank. The Bank may sell, assign, or transfer this Agreement or the Account or the Deposit Account, or any portion thereof, at any time and without your prior consent. If the Account is sold, assigned or transferred, the Bank also may sell, assign or transfer the Deposit Account.

28. Integrated Agreement. This Agreement (including the accompanying Pricing Appendix) is the final written expression of the agree-

DECLARATION OF JOHN H. BEDARD, JR.　　　　　　　　　　EXHIBIT A

ment between you and the Bank concerning the Account and the Deposit Account, and this Agreement may not be contradicted by evidence of any alleged oral agreement.

29. **Your Billing Rights. Keep This Notice For Future Use.** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at Merrick Bank, P.O. Box 9201, Old Bethpage, NY 11804-0002. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you questioned, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rules for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a) You must have made the purchases in your home state or, if not within your home state, within 100 miles of your current mailing address; and
b) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

30. **Legal Processes Against Your Account.** The Bank will comply with any notice of garnishment, attachment, tax levy, injunction, restraining order, subpoena, or other legal process relating to your Account or Deposit Account that, in its sole judgment, appears to be valid. If your Account or Deposit Account becomes involved or subject to any legal or administrative proceeding, and the Bank is ordered or required to take any action relative to your Account or Deposit Account that is inconsistent with the terms of this Agreement, the terms of such order or requirement shall supersede and replace the terms of this Agreement.

31. **Consumer Reports.** You authorize us to request consumer reports, including periodic updates, about you, to make whatever credit investigations we deem appropriate, to obtain and exchange any information we may receive from consumer reports and other sources, and to use such information for any purpose, subject to applicable law.
You authorize us to furnish information concerning your Account and your performance under this Agreement to consumer reporting agencies, or others, subject to applicable law but acknowledge that we are under no duty to do so. If you believe information we have furnished about your Account to a consumer reporting agency is inaccurate, you should notify the appropriate credit reporting agency to request that it investigate the possible inaccuracy. You may also write to us at Merrick Bank, P.O. Box 9201, Old Bethpage, NY 11804-9002, and identify the specific information you believe is inaccurate.
  A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement.

32. **Deposit Account Disclosures.** If you have a Deposit Account, the following shall apply:

a. **Interest Rate.** Interest will not be paid on your Deposit Account.

b. **Minimum Balance to Open and Maintain the Deposit Account.** You must initially deposit, and at all times maintain, the *Initial Deposit Amount* shown in the *"Deposit Account Disclosure"* section of the *Pricing Appendix*, unless we specifically agree otherwise with you. If you do not, we either will not open the Account, or we may terminate the Account. We reserve the right to refuse to accept any deposit into the Deposit Account.

c. **Subsequent Deposits.** Subsequent deposits into your Deposit Account must be made in increments equal to the *Subsequent Deposit Amount* shown in the *"Deposit Account Disclosures"* section of the *Pricing Appendix*.

d. **Transaction Limitations.** You may not withdraw or transfer funds from the Deposit Account, except as otherwise set forth in this Agreement. Funds from a closed Deposit Account will be returned in accordance with Section 17 above.

e. **Fees.** The following fees may be charged to your Deposit Account: Returned Items: A Returned Item Fee, as shown in the *"Fees and Payments"* section of the *Pricing Appendix*, will be charged for each check or other item submitted as a deposit to the Deposit Account that is returned or rejected for any reason, including insufficient funds.

f. **Statements.** Information about the Deposit Account will appear on each periodic statement that we send you.

g. **Joint Accounts.** We require that any Deposit Account be owned by one individual. If the Deposit Account is jointly held, we may require you to transfer the ownership of the account to a single owner who is primarily obligated on the Account or we may close the Deposit Account.

Equal Opportunity Lender
Member FDIC                    G-9317    03/07

DECLARATION OF JOHN H. BEDARD, JR.                    EXHIBIT A