IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HORNICEK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARDWORKS SERVICING, LLC,<br><br>Defendant. | Civil Action<br><br>No. 10-3631 |

June 29, 2011

## MEMORANDUM

Plaintiff Anthony Hornicek, on behalf of himself and all others similarly situated, filed a complaint against defendant Cardworks Servicing, LLC, alleging a violation of the Fair Debt Collection Practices Act, codified at 15 U.S.C. § 1692 *et seq*. Presently before the court is Cardworks Servicing's Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3. For the reasons set forth below, the court will grant Cardworks Servicing's motion.

**I.  Background**

On or about December 24, 2004, plaintiff Anthony Hornicek ("Hornicek" or "plaintiff") opened a credit card account with Merrick Bank and received a credit card

and a copy of the cardholder agreement.[1] The credit card agreement reads, in pertinent part:

> Any claim, dispute or controversy ("Claim") by either you or us against the other arising from or relating in any way to the Agreement or your Account . . . shall, at the demand of any party, be resolved by binding arbitration. . . .
>
> . . . .
>
> This agreement to arbitrate Claims includes all controversies and claims of any kind between us. It also includes any disputes you have with our agents, contractors, employees, officers, or assignees, . . . or any other third party that has been involved or becomes involved with, or whose trademarks are used in connection with, any purchase, marketing, soliciting, servicing, or credit-reporting activity relating to your Account.
>
> The Claims covered by this agreement to arbitrate include, without limitation . . . Any disputes arising from the collection of amounts you owe in connection with your Account. . . .

Watson Decl. (Docket No. 12) Ex. A; *id.* Ex. B. Hornicek used the card to make purchases, and he made several payments on the account. Hornicek admits that, at some point, he stopped making payments on the credit card. On or about August 26, 2008, Merrick Bank hired Cardworks Servicing, LLC ("Cardworks" or "Cardworks Servicing"), to engage in collection activities related to Hornicek's account.[2] On

---

[1] Hornicek disputes that December 24, 2004, is the date on which the card was issued; however, Cardworks has provided documentary evidence that plaintiff used the card on January 14, 2005, establishing that the card was issued, at most, within a few weeks of that date. Watson Decl. at Ex. F. In any event, the precise date is of no consequence.

[2] Hornicek denies that Merrick Bank hired defendant Cardworks Servicing, LLC, to engage in collection activities in relation to the alleged debt. However, the Senior Vice President of Operations for Merrick Bank provided a declaration attesting to the fact that

2

February 16, 2010, in regard to the alleged debt, Cardworks sent to Hornicek a letter, which Hornicek characterizes as containing false and misleading statements. On July 23, 2010, Hornicek filed a complaint with this court on behalf of himself and all others similarly situated, alleging a violation of the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. § 1692 *et seq*. The complaint was served on Cardworks on August 6, 2010. Cardworks made a timely demand for arbitration on September 9, 2010. On November 1, 2010, Cardworks filed a Motion to Compel Arbitration and Stay Proceedings. Presently before the court are Cardworks' Motion to Compel Arbitration and Stay Proceedings, and all responses thereto.

**II.    Discussion**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, agreements to arbitrate are enforceable to the same extent as other contracts. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). The FAA provides, in pertinent part, "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a strong federal policy in favor of resolving of disputes through arbitration. *Alexander*, 341 F.3d at 263. If a party

---

Merrick Bank referred Hornicek's credit card account to defendant Cardworks. Watson Decl. ¶ 17.

to a binding arbitration agreement is sued in federal court on a claim that the plaintiff has agreed to arbitrate, he is entitled under the FAA to a stay of the court proceeding pending arbitration and an order compelling arbitration. 9 U.S.C. §§ 3–4; *Alexander*, 341 F.2d at 263. If all of the claims are arbitrable, a court may dismiss the entire action. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 600 (3d Cir. 2002).

As a matter of contract law, no party can be forced to arbitrate unless that party has entered into an agreement to do so. *See PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002). Therefore, before a court can dismiss a suit and compel an unwilling party to arbitrate, it must conduct a review to ensure that (1) a valid agreement to arbitrate exists between the parties, and (2) that the specific dispute falls within the scope of that agreement. *Id*. In conducting this limited review, the court must apply ordinary contractual principles, with a "healthy regard for the strong federal policy in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

(1) Is there a valid agreement to arbitrate

In general, only parties to a contract are bound by its terms. *See AT&T Techs., Inc. v. Comm. Workers*, 475 U.S. 643, 648 (1986). In limited circumstances, the Third Circuit has recognized that non-signatories may be parties to a contract for the purpose of enforcing arbitration provisions. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice*

4

*Litig.*, 133 F.3d 225, 229 (3d Cir. 1998) ("The identification of the parties bound by the agreement to arbitrate need not be confined to . . . identifying the signatories to the arbitration agreement. Rather, the dispositive finding is an express and unequivocal agreement between parties to arbitrate their disputes."). In the absence of an express contractual agreement to arbitrate with a non-signatory, traditional state-law contract principles can be used "by or against nonparties" to enforce an arbitration agreement. *Arthur Andersen, LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009). These include: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; (5) estoppel; and (6) third-party beneficiaries. *See id.*; *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 534 n.18 (3d Cir. 2009); *see also E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001).

Defendant Cardworks Servicing moves to compel Hornicek to arbitrate his claims based on the arbitration provision in the cardholder agreement between Hornicek and Merrick Bank. Even though Cardworks is not a signatory to the agreement, Cardworks contends that (1) the language of the arbitration provision is sufficiently broad to encompass Cardworks, and (2) the agreement expressly includes all claims related to debt collection regardless of the target of those claims. Hornicek opposes this motion, arguing that there is no valid agreement to arbitrate with Cardworks because Cardworks is neither a signatory, nor entitled to an exception that would confer legal standing to enforce the

5

agreement.[3]  Specifically, Hornicek claims that Cardworks is not an agent, contractor, employee, officer, assignee, or third-party servicer.

According to the terms of the cardholder agreement, plaintiff has agreed to arbitrate any disputes with Merrick Bank's "agents, contractors, employees, officers, or other assignees . . . or any other third party that has been involved with . . . any purchasing, marketing, soliciting, servicing, or credit-reporting activity relating to [the] account."[4]  Watson Decl. Ex. A ¶ 22.  The broad language of the cardholder agreement

---

[3] Hornicek denies receiving the cardholder agreement containing the arbitration provision and argues that the lack of receipt precludes a valid agreement to arbitrate. However, Hornicek admits to receiving the card, using the card, and receiving billing statements that were sent to the same address as the cardholder agreement.  *See* Pl.'s Resp. to Def.'s Mot. to Compel Arb. and Stay Proceedings (Docket No. 29) ¶¶ 2,5,6; Watson Decl. ¶ 8. Moreover, Cardworks has proffered evidence that Hornicek made payments on the card.  Watson Decl. Ex. F.  There is a presumption that a "properly mailed document is received by the addressee," *Davis v. U.S. Bancorp*, 383 F.3d 761, 766 (8th Cir. 2004).  This presumption is triggered by circumstantial evidence that the letter was sent— here, an affidavit from Cami Mitchell Watson, who is familiar with Merrick Bank's practices and procedures. *Id.*; Watson Decl. ¶¶ 2,3 7–10.  Accordingly, because there is a presumption of receipt and because Hornicek performed under the contract (by paying his debt to Merrick Bank), the court finds that an arbitration agreement did exist. *See Athon v. Direct Merch. Bank*, 2007 WL 1100477, at *3–4 (M.D. Ga. Apr. 11, 2007) (where credit card holder was mailed an arbitration agreement at his billing address, and he paid those bills, the card holder's denial that he received the arbitration agreement did not rebut the presumption of receipt, and he was bound by the arbitration agreement).

[4] Cardworks initially argued that it was an assignee of Merrick Bank, but has since changed its position.  Additionally, Cardworks argues that the ordinary understanding of agents, contractors, employees, and officers, rather than the legal meaning, should apply in this case.  Hornicek contends that defendant should be estopped from changing its position and that the strict legal meaning should control.  Since Cardworks' legal status as an assignee, agent, contractor, employee, or officer is not pertinent to the court's disposition of this case, the court need not resolve this question.

compels Hornicek to arbitrate with non-signatory third parties if they fall within one of the enumerated categories.

Here, Cardworks Servicing is not a signatory to the agreement. Cardworks Servicing became "involved" with the "servicing" of Hornicek's account with Merrick Bank when it engaged in the collection of that account. Therefore, Cardworks Servicing falls squarely within one of the enumerated categories with which Hornicek has agreed to arbitrate. In other words, based on the terms of the cardholder agreement, there is an "express and unequivocal agreement to arbitrate" claims with Cardworks Servicing. *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1512 (3d Cir. 1994), *aff'd*, 514 U.S. 938 (1995)*; see also Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 382 (5th Cir. 2008) (holding that loan agreement including claims arising from "the relationships . . . result[ing] from the agreement," was broad enough to include plaintiff's FDCPA claims against non-signatory debt collector); *Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (concluding that provision including claims arising from "the relationships . . . result[ing] from the [agreement]," was broad enough to allow non-signatory third party to invoke it against plaintiff); *cf. Fox v. Nationwide Credit, Inc.*, No. 09-cv-7111, 2010 WL 3420172, at *3–4 (N.D. Ill. Aug. 25, 2010) (distinguishing *Blinco* and *Sherer* on the grounds that the arbitration clause restricted arbitration to the signatories, despite the broad definition of "claims"). Based on the language of the cardholder agreement, Hornicek has agreed to arbitrate with Cardworks Servicing.

7

Hornicek contends that Cardworks did not service the account because service has a specific and narrow legal definition, namely "receiving an account while it is still current." (The cardholder agreement does not define "service," "servicing," or "servicer.") Plaintiff cites *Alamo v. ABC Financial Services, Inc.*, 2011 WL 221766, at *3–4 (E.D. Pa. Jan. 20, 2011), and *Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 88 (2d Cir. 2003), as authority for this proposition. However, in those cases, the court determined that loan servicers were exempt from the provisions of the FDCPA pursuant to 28 U.S.C. § 1692(a)(6)(F)(iii) because they acquired title to the disputed account before the account was in default. Neither case purports to define the term "servicer." Moreover, neither the legal definition of service, nor the plain meaning of this phrase coincides with the limited definition that plaintiff advances. *See Black's Law Dictionary* 1491 (9th ed. 2009) (defining "service," in pertinent part, as "the act of doing something useful for a person or company" or "an intangible commodity in the form of human effort"); *Webster's New Int'l Dictionary* 2075 (3d ed. 1966) (defining service as "to meet the needs of" or "to provide information or assistance"); *Bodell Const. Co. v. Robbins*, 215 P.3d 933, 939 (Utah 2009) (holding that the plain meaning of a contract's terms controls).[5] Accordingly, the court finds that the language of the arbitration

---

[5] When deciding whether the parties have agreed to arbitrate, ordinary state contract laws apply. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the cardholder agreement contains an explicit choice of law provision that the substantive law of the state of Utah will apply. Watson Decl. Ex. A ¶ 21. Once a court has found there is a valid agreement to arbitrate, federal law governs the determination of

8

agreement is broad enough to permit Cardworks Servicing to invoke it.

(2) Does Hornicek's claim fall within the scope of the agreement

When a court is deciding whether to compel arbitration, it must determine both that a valid agreement to arbitrate exists and that the specific dispute falls within the scope of that agreement. *See PaineWebber,* 921 F.2d at 511; *Pritzker v. Merrill Lynch*, 7 F.3d 1110, 1114 (3d Cir. 1993). Although the court has determined that there is a valid agreement to arbitrate, it must also evaluate whether plaintiff's claim falls within the scope of the agreement. Here, Hornicek's claim is that Cardworks "violated the FDCPA by using false and deceptive representations in the collection of consumer debt." Compl. ¶ 3. This claim falls squarely within the terms of the arbitration provision, which states, in relevant part, that "[a]ny disputes arising from the collection of amounts you owe in connection with your [a]ccount" will be subject to arbitration. Although Hornicek argues that the dispute centers around Cardworks' illegal actions, and has nothing to do with the credit agreement, he admits that he stopped making payments and that Cardworks sent to him a letter "in connection with a consumer debt allegedly due Merrick Bank." Compl. ¶ 3; Pl.'s Resp. to Def.'s Mot. to Compel Arb. and Stay Proceedings ¶ 11. The dispute between Hornicek and Cardworks centers on the collection of a debt allegedly due under the cardholder agreement, and the claim is identified in the

---

whether the claim is arbitrable. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 154 (3d Cir. 2001).

cardholder agreement as subject to arbitration. *See Kaplan*, 19 F.3d at 1512. The claim thus falls within the scope of the agreement and is arbitrable. In light of this conclusion and the strong federal policy favoring arbitration, it is appropriate to compel arbitration of Hornicek's FDCPA claims.

## III. Conclusion

For the reasons stated above, Cardworks' Motion to Dismiss will be granted. An appropriate order accompanies this memorandum.